## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **BARBARA GARY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 5:16-CV-151 (TES)** |
| | : | |
| **CITY OF WARNER ROBINS,** | : | |
| **GEORGIA,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Barbara Gary brings this action against her former employer, the City of Warner Robins, Georgia ("the City"), alleging the City discriminated and retaliated against her based on her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); her disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"); and her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Plaintiff also alleges the City failed to accommodate her disability in violation of the ADA, and interfered with her rights and retaliated against her in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). The City moves for summary judgment on all claims. Having carefully considered the parties' arguments, the record, and applicable law, the Court finds no genuine issues of material fact exist as

to any claim and hereby **GRANTS** the City's Motion [Doc. 21].

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[1] Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[2] This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[4] The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5] If the moving party discharges this burden, the burden then shifts to the nonmoving party to

---

[1] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[3] *See id.* at 249-52.

[4] *See id.* at 254-55; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[5] *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[6] This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

## BACKGROUND

Plaintiff Barbara Gary worked in the City's Police Department (the "Department") for almost 10 years, from January 2005, until the City terminated her employment on September 23, 2014. The City contends it lawfully terminated her due to multiple violations of City and Departmental policies and rules related to tardiness, unexcused absences, and misuse of leave. Plaintiff, however, contends the City unlawfully terminated her, discriminated against her, failed to accommodate her, failed to inform her of her FMLA rights, and retaliated against her because of her age (53), her gender, her disability (vascular tension headaches), and her use of leave.

For purposes of this Motion, the material facts in the light most favorable to Plaintiff, the non-movant, are as follows:[8]

Plaintiff held several different positions while employed in the Department. Police Chief Brett Evans originally hired Plaintiff on January 5, 2005, as a Clerk in the Records

---

[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324-26.

[7] *Avirgnan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[8] The City filed multiple objections to statements in Plaintiff's declaration and asserted facts in her Statement of Undisputed Material Facts. For purposes of summary judgment only, the Court will assume these statements and asserted facts are admissible.

Division. In April 2006, the City promoted Plaintiff to ID Clerk (a position the City later upgraded to Administrative Secretary) in the Identification Criminalistics Division ("ICD"), where she became certified in fingerprint analysis. Plaintiff held this position in ICD for six and a half years, until January 2013, when Chief Evans initiated the first of three transfers to different positions in the Department during the last year and nine months of her employment. In January 2013, Chief Evans transferred Plaintiff from her position in ICD to work the night shift on the Front Desk; in April 2013, he transferred her to work the day shift in the Records Division; and in August 2014, he transferred her back to the Front Desk, but she remained on the day shift. Plaintiff's claims primarily relate to her employment during this last year and nine months of her employment.

During the first four years of Plaintiff's employment, the Department administered performance reviews of her performance.[9] In 2010, performance reviews stopped being associated with pay raises, and thus, the Department stopped administering them for Plaintiff.[10] It is undisputed Plaintiff received positive performance reviews during the time the Department administered them, and no evidence indicates she did not perform well in each position she held throughout the remainder of her employment.

Plaintiff suffers from vascular tension headaches and experienced such headaches

---

[9] Evans Decl., ¶ 4, [Doc. 21-3].
[10] *Id.*

throughout her employment. Sometimes her headaches were so severe, they incapacitated her, and she was unable to report for duty. Plaintiff asserts she first informed Chief Evans of her headaches in 2006 when she was promoted to her position in ICD.

The Department utilizes a progressive discipline system.[11] Each supervisor has discretion whether to initiate disciplinary action when an employee violates Departmental and/or City rules and policies.[12] When an employee is late to work, the supervisor will first speak to the employee, and if problems persist, the supervisor will document the infraction in a performance log.[13] Supervisors consider performance logs for up to one year when determining whether future violations will result in disciplinary action, which includes verbal counseling and written counseling. In addition, when an employee violates the rules and policies, a supervisor can initiate an internal affairs ("IA") investigation. If the investigation substantiates the violation, the employee may receive more severe disciplinary action, including suspension and termination. Chief Evans is the final decision maker on all IA investigations.

In the last years of her employment, Plaintiff had multiple attendance-related violations of City and Departmental rules and policies resulting in several disciplinary actions. In April 2009, Captain John Lanneau—Plaintiff's supervisor in ICD—filed an IA

---

[11] Evans Depo., p. 34, [Doc. 31-33].

[12] *Id.* at p. 36.

[13] *Id.* at p. 35.

complaint against Plaintiff for violations of the City's sick leave policy based on Plaintiff's "excessive usage of leave."[14] In the first three months of 2009, Plaintiff used 41 hours of sick leave (thereby exhausting it) and 44.5 hours of annual leave. In his complaint, Captain Lanneau wrote:

> "In addition to the excessive use of sick leave, certain usage patterns have been observed. Records indicate that [Plaintiff] is most likely to request sick leave on Thursdays, Friday, and Mondays. This pattern concerns me, especially in light of her latest request. [Plaintiff] called in sick on Wednesday, April 1, 2009, and remained out the remainder of the week. During this period, [Plaintiff] interacted with members of the animal shelter while adopting a dog, and with members of veterinary clinic, instead of coming to work. My concerns are related to [Plaintiff's] excessive use of sick leave, and the unique selection of days (Thursday, Friday, & Monday) sick leave is requested. These two concerns also cause me to judge the legitimacy of the requests."[15]

As a result of the IA Division's investigation into Captain Lanneau's complaints, Plaintiff received a verbal counseling from Chief Evans and a written counseling from Captain Lanneau stating the Department's expectations concerning her use of sick leave. Chief Evans also required Plaintiff to provide doctors' notes for all absences because of personal or family illnesses. Plaintiff states she reiterated to Captain Lanneau and Chief Evans at this time that she suffered from vascular tension headaches sometimes so severe she was unable to work.[16] For the next two and a half years, Plaintiff received no

---

[14] IA Complaint Form dated April 7, 2009, Pl. Depo., Ex. 4 [Doc. 24-2, p. 33].

[15] *Id.*

[16] Chief Evans disputes Plaintiff's claims that she informed him of her headaches, maintaining he knew nothing of Plaintiff's disability until this litigation. At this summary judgment stage, however, the Court accepts Plaintiff's version of the facts.

disciplinary actions.

At the end of 2012, Plaintiff exhausted all of her accumulated leave and used more than 85 hours of leave-without-pay, which Chief Evans approved, due to absences related to her headaches, the flu, and taking her children to spend time with their father in Mississippi who suffered from terminal liver cancer.[17] On January 10 and 11, 2013, Plaintiff was absent from work due to her headaches. Because she had exhausted her leave, she requested leave-without-pay for those two days, which Chief Evans approved. Three days later, on January 14, 2013, Chief Evans transferred Plaintiff from her day-shift position in ICD, to work the night shift at the Front Desk.[18] Plaintiff testifies the Chief transferred her because he was mad about her leave. Chief Evans states he assigned her to the night shift "because she had missed so much work and was not dependable."[19]

Upon learning of her transfer, Plaintiff contacted the Department's Human Resources Department ("HR") and spoke to Toni Graham. Plaintiff explained to Ms. Graham that her use of leave was because of her headaches, the flu, and her ex-husband's terminal cancer. Plaintiff states Ms. Graham did not provide her with any information

---

[17] In November and December 2012, Plaintiff took time off work to take her teenage children to be with their father (her ex-husband) in the last weeks of his life. He passed away in early February 2013. Plaintiff does not bring (nor could she bring) any claims that the City retaliated against her or interfered with her rights under the FMLA for any time she took off to care for and/or visit her ex-husband. Any such claim would fail because the FMLA only provides leave to care for an employee's spouse, and it is undisputed Plaintiff was not married at the time she took leave. Moreover, Plaintiff did not bring a claim of association discrimination under the ADA.

[18] Assignment letter to Plaintiff from Chief Evans, Pl. Depo., Ex. 5 [Doc. 24-2, p. 61].

[19] Evans Declaration, ¶5 [Doc. 21-3].

about the Family Medical Leave Act, and she told Plaintiff the City "may be trying to get rid of [her] before her retirement benefits with Defendant vested because [she] was approaching ten years of employment."[20] Plaintiff remained with the Front Desk on the night shift for about three months without incident.

Effective April 22, 2013, Chief Evans re-assigned Plaintiff from working the night shift at the Front Desk to work the day shift as an Administrative Secretary within the Records Division.[21] On May 1, 2013, the eighth day working at her new assignment, Plaintiff overslept and was late to work. Her supervisor, Captain Joe Wetherington, issued Plaintiff a performance log in which he advised her that tardiness was unacceptable and failure to report to work on time in the future could result in disciplinary action.[22] Two days later, on May 3, Captain Wetherington issued Plaintiff another performance log in an "effort to reduce the amount of personal breaks [taken] by [Plaintiff]."[23] Plaintiff was informed she could take one break every 4 hours, and she was reminded she must still obtain doctor's excuses for sick leave.[24]

From January 2014, until she was terminated in September, Plaintiff had five attendance-related incidents that resulted in disciplinary actions for tardiness, failing to report to work, and unbecoming conduct. On February 27, 2014, Plaintiff failed to timely

---

[20] Plaintiff Decl., ¶ 22 [Doc. 31-30].
[21] Assignment letter to Plaintiff from Chief Evans, Pl. Depo., Ex. 6 [Doc. 24-2, p. 62].
[22] Performance Log dated May 1, 2013, Pl. Depo., Ex. 7 [Doc. 24-2, p. 63].
[23] Performance Log dated May 3, 2013, Pl. Depo., Ex. 8 [Doc. 24-2, p. 64].
[24] *Id.*

report for duty because she overslept. The very next day, on February 28, Plaintiff was late to work again because she had forgotten her glasses and had returned home to get them. Although Plaintiff did not inform Captain Wetherington she would be late, she did attempt to notify a co-worker. Because of these two infractions, Captain Wetherington initiated an IA investigation, and on April 9, 2014, after the investigation's conclusion, he issued Plaintiff a letter of counseling to report to work on time as required.[25]

Approximately one month later, on May 8, 2014, Plaintiff reported late to work for a third time because she overslept. Again, when Plaintiff had not arrived to work on time, Captain Wetherington called her, and Plaintiff told him she would soon arrive for duty. Captain Wetherington initiated a second IA investigation which resulted in an eight-hour suspension without pay and 12-month probationary status.[26] The City warned Plaintiff any future policy violations could result in greater discipline, including termination.

The next month, in June 2014, the Department discovered Plaintiff did not return to work on the days she was released early from serving on the Houston County Grand Jury, and she had not received permission to be absent from work. Plaintiff had been selected to serve on a grand jury for the first six months of 2014, from January through June. The City paid Plaintiff eight hours for each day she served during this time period.

---

[25] Letter of Counseling to Plaintiff from Captain Wetherington dated April 9, 2014, Pl. Depo., Ex. 10 [Doc. 24-2, p. 67].

[26] Letter from Lt. Scott McSwain to Chief Evans dated May 21, 2014, Pl. Depo., Ex. 12 [Doc. 24-2, p. 14].

The City's Civil Leave policy provides that an employee who is called to serve on a jury "will be granted civil leave for the period of time that [the employee is] actually required to be away from [his or her] job."[27] The City's Absence without Leave policy states that any absence of an employee from duty "that is not authorized by specific grants of leave under the leave regulations shall be deemed to be an absence without leave," and "[a]ny such absence shall be without pay and shall subject the employee to disciplinary action."[28]

Based on the belief Plaintiff had violated these policies, the Department initiated another IA investigation, the third in five months. On June 19, 2014, while still on probationary status, Plaintiff was placed on administrative leave pending the IA investigation. The investigation revealed that no grand jury session lasted an entire workday during those six months, Plaintiff did not receive permission to be absent, and she did not report for duty on those days. Thus, on July 31, 2014, Chief Evans informed Plaintiff she would be demoted one grade level without a pay reduction, she must reimburse the City 50 hours of annual leave, and she would be placed on 12-month probationary status. The City warned her "any [future] violations may result in further disciplinary actions, up to, and including termination."[29]

James Windham, another City employee (although not employed with the Police

---

[27] The City's Employee Handbook at Warner Robins, Pl. Depo., 65:16-66; Ex. 15 [Doc. 27-5].
[28] *Id.*
[29] Pl. Depo., p. 66 [Doc. 31-31].

Department), served on the same grand jury with Plaintiff. Like Plaintiff, he also did not report to work on the days they were released early from duty. Also like Plaintiff, Mr. Windham received a written reprimand and was originally required to reimburse the City annual leave. Unlike Plaintiff, however, Mr. Windham appealed his reprimand, and the City reversed its decision to require him to reimburse annual leave.

Less than a month after being disciplined for the grand jury incidents, in August 2014, Plaintiff took an unauthorized day off of work. In the early morning of August 18, she sent a text message to her supervisor at the time, Lt. Lee VanOsdol, stating that she needed to take the day off due to a "personal family matter."[30] Lt. VanOsdol denied her leave request. Plaintiff attempted to contact the next-in-command, Captain Bryan Stewart, to receive permission to be absent, but she did not reach him. Plaintiff did not report to work for duty. The City initiated another IA investigation, the fourth of the year, and on August 19, 2014, it placed Plaintiff on administrative leave for the second time in two months.

On August 22, 2014, while Plaintiff was on administrative leave pending the investigation, Plaintiff filed a formal grievance against Chief Evans with the City's HR Department. Plaintiff complained that Chief Evans treated her unfairly. Pursuant to City policy, a neutral mediator approved by Plaintiff investigated the grievance. On September 7, the mediator informed the City of his finding that Plaintiff's allegations

---

[30] IA Investigation Activity Log, Pl. Depo., Ex. 17 [Doc. 27-17, p. 3].

were unsubstantiated.

On September 8, 2014, the City suspended Plaintiff for three days with pay pending discharge for violating her probationary status. The City's Mayor adopted the mediator's findings on September 12, and the City formally terminated Plaintiff on September 23, 2014, for violations of the City's policies. She was 53 years old. The City did not hire anyone to replace Plaintiff. Chief Evans states Booking Agent Luciana Davis absorbed Plaintiff's duties after her termination.

Plaintiff points to several co-workers she contends were similarly situated to her but treated more favorably. In addition to James Windham, the City employee who served with Plaintiff on the grand jury, Plaintiff points to three male employees she contends shows the City's bias toward her gender—John Clay, Al Rowland, and Captain Lanneau. John Clay used 131.5 hours of sick leave in 2013, while Plaintiff only used 56 hours of sick leave, yet the City did not terminate him. Plaintiff states Al Rowland, Plaintiff's co-worker in ICD, and Captain Lanneau, Plaintiff's supervisor in ICD, were both compensated for fingerprint analyses, but Plaintiff was not.

Plaintiff also points to several younger women whom she contends engaged in similar misconduct but were not disciplined or terminated thereby evidencing the City's bias toward her age—Shelly Belknap, Stephanie Sides, Jessica Hayes, Melanie Humphrey, and Danielle Taylor. Plaintiff states Shelly Belknap, who worked with Plaintiff in ICD and was also supervised by Captain Lanneau, used multiple days of sick

leave to care for her sick dog but was not subjected to an IA investigation or disciplined like Plaintiff was when she picked up her dog from the veterinarian while out on sick leave. Plaintiff contends co-workers Stephanie Sides, Melanie Humphreys, Danielle Taylor, and Jessica Hayes came in late to work more often than not but were never disciplined.

## DISCUSSION

### I.  DISPARATE TREATMENT/DISCRIMINATORY DISCHARGE CLAIMS

#### A.  Plaintiff Abandoned ADA Discriminatory Treatment Claim

In her Complaint, Plaintiff alleged the City discriminated against her based on her gender, age, and disability in violation of Title VII, the ADEA, and the ADA. The City moved for summary judgment on each of these claims. Plaintiff, however, failed to respond to or address the City's arguments regarding her ADA discriminatory treatment allegations and only addressed her ADA failure to accommodate and retaliation claims. Thus, Plaintiff has abandoned any alleged ADA disparate treatment/discriminatory discharge claim. "When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims."[31] Therefore, the Court only addresses the merits of Plaintiff's disparate treatment/discriminatory discharge claims under Title VII and the ADEA.

---

[31] *Johns v. CSX Transp., Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016) (citations omitted).

### B. Title VII and ADEA Discriminatory Treatment Claims

Because Plaintiff seeks to prove her Title VII and ADEA discriminatory treatment claims through circumstantial evidence, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*[32] guides the Court's analysis for both claims.[33] Under this framework, a plaintiff must first establish a *prima facie* case by establishing "facts adequate to permit an inference of discrimination."[34] If the plaintiff establishes her *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse employment action.[35] If the employer meets this "exceedingly light" burden, then the inference of discrimination is erased, and the burden shifts back to the plaintiff, who must show that the employer's proffered reasons were merely pretext for discrimination.[36] Importantly, the ultimate burden of persuasion remains on the plaintiff all times.[37]

### 1. *Prima Facie* Case

Title VII prohibits an employer from discharging or otherwise discriminating against any individual because of such individual's sex.[38] To establish a *prima facie* case of disparate treatment under Title VII, Plaintiff must generally show she (1) is a member of

---

[32] 411 U.S. 792 (1973).

[33] *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (Title VII); *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (ADEA).

[34] *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

[35] *Cleveland*, 369 F.3d at 1193.

[36] *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

[37] *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

[38] 42 U.S.C. § 2000e-2(a)(1).

a protected class; (2) suffered an adverse employment action; and (3) was treated less favorably than a similarly situated individual outside her protected class or was replaced by a person outside of her protected class.[39]

Similarly, the ADEA makes it unlawful for an employer to discharge or otherwise discriminate against any employee who is at least 40 years old on the basis of age.[40] To make a *prima facie* case of age discrimination, the employee must show "(1) [s]he was a member of the protected group between the age of forty and seventy; (2) [s]he was subject to an adverse employment action; (3) a substantially younger person filled the position from which [s]he was discharged; and (4) [s]he was qualified to do the job from which [s]he was discharged."[41] In addition, "[t]o assert an action under the ADEA, an employee must establish that his age was the 'but-for' cause of the adverse employment action."[42]

For both of these claims, Plaintiff attempts to establish a *prima facie* case of discrimination by showing the City treated similarly situated employees outside her protected class more favorably. The adequacy of the comparators is crucial, and the Court must consider whether the employees were, in fact, similarly situated to Plaintiff "in all relevant respects" and treated more favorably.[43] "When a plaintiff alleges discriminatory

---

[39] *See, e.g., Maynard v. Bd. of Regents,* 342 F.3d 1281, 1289 (11th Cir. 2003).
[40] *See* 29 U.S.C. §§ 623(a)(1), 631(a).
[41] *Liebman,* 808 F.3d at 1298 (citing *Kragor v. Takeda Pharm. Am., Inc.,* 702 F.3d 1304, 1308 (11th Cir. 2012)).
[42] *Id.* (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 176 (2009)).
[43] *Holifield,* 115 F.3d at 1562.

discipline, to determine whether employees are similarly situated, [the court must] evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."[44] "The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies."[45] However, "the quantity and quality of the comparator's misconduct must be nearly identical [to the plaintiff's] to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."[46] "The most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed."[47] Here, none of the co-workers Plaintiff points to are sufficiently similar to qualify as suitable comparators.

### a. Title VII Claim

Plaintiff identifies James Windham, John Clay, Al Rowland, and John Lanneau as similarly situated male employees who engaged in similar conduct but were treated more favorably. James Windham, the male employee who, like Plaintiff, did not return to work after grand jury duty, cannot serve as a proper comparator. The City originally gave Mr. Windham the same discipline as Plaintiff. However, Mr. Windham appealed the discipline; Plaintiff did not. Moreover, Mr. Windham did not work for the Police

---

[44] *Burke-Fowler v. Orange Cnty., Fla.,* 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted).
[45] *Lanthem v. Dep't of Children & Family Servs.,* 172 F.3d 786, 793 (11th Cir. 1999).
[46] *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999); s*ee also Burke-Fowler,* 447 F.3d at 1323.
[47] *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1281 (11th Cir. 2008).

Department and did not have the same decision maker—Chief Evans—as Plaintiff. "[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination"[48] because different decision makers may employ different disciplinary measures.[49]

John Clay also cannot serve as a proper comparator. The records show John Clay used over twice the amount of sick leave Plaintiff used in 2013—131.5 hours compared to Plaintiff's 56 hours—but, unlike Plaintiff, he was not subjected to discipline for doing so. However, the record only contains the number of hours Mr. Clay used; it contains no surrounding context. No evidence shows his employment position, his duties, his disciplinary record, his supervisor, or the circumstances under which he took leave. Without such evidence, Plaintiff cannot establish Mr. Clay is similarly situated to her.

Finally, Al Rowland, Plaintiff's co-worker in ICD, and Captain Lanneau, Plaintiff's supervisor in ICD, are improper comparators. Plaintiff contends both were compensated for their fingerprint analysis duties, but Plaintiff was not. However, Plaintiff again fails to point to any evidence regarding Mr. Rowland's specific position in ICD, his duties, or his disciplinary record, and Captain Lanneau was Plaintiff's supervisor. No evidence reflects she and Lanneau were engaged in substantially equal work such that he is a proper

---

[48] *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001); *see also Mack v. ST Mobile Aerospace Eng'g, Inc.* 195 F. App'x 829, 844 (11th Cir. 2006) (finding comparators not similarly situated to plaintiff because plaintiff reported to different supervisor).
[49] *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

comparator.[50] Thus, Plaintiff fails to establish a *prima facie* case of sex discrimination under Title VII.

### b. ADEA claim

As to her ADEA claim, Plaintiff identifies five younger women whom she contends engaged in similar conduct but were never disciplined: Shelly Belknap, Stephanie Sides, Jessica Hayes, Melanie Humphrey, and Danielle Taylor. Plaintiff states Shelly Belknap used multiple days of sick leave to care for her sick dog but was not subjected to an IA investigation or disciplined like Plaintiff was when she picked up her dog from the veterinarian while out on sick leave. Plaintiff, however, was not disciplined for simply picking up her dog while she was out on sick leave. On the contrary, Captain Lanneau was concerned about the "legitimacy" of Plaintiff's pattern of leave based on Plaintiff's "excessive use of sick leave, and the unique selection of days (Thursday, Friday, & Monday) sick leave is requested."[51] No evidence establishes Captain Lanneau had the same concerns regarding Ms. Belknap.

Plaintiff contends Stephanie Sides, Melanie Humphreys, Danielle Taylor, and Jessica Hayes came in late to work more often than not but were never disciplined. However, no evidence establishes their disciplinary records or the circumstances under which they were late on any given day. Again, without any such evidence, Plaintiff fails

---

[50] *See Dimino v. Georgia Dept. of Admin. Srvs.*, 631 F. App'x 745, 747 (11th Cir. 2015) (employee's supervisor not a proper comparator because no evidence they were engaged in "substantially equally work").

[51] IA Complaint Form dated April 7, 2009, Pl. Depo. Ex. 4 [Doc. 24-2, p. 33].

to show these employees were involved in or accused of the same or similar conduct and disciplined in different ways.

Moreover, Plaintiff's contention she can establish a *prima facie* case of age discrimination because she was replaced by a younger employee also fails. When evaluating a replacement, the court "should focus on the person that physically replaced the employee or consider whether that job title was actually filled."[52] Here, the City did not hire or promote anyone to fill the Front Desk Clerk position Plaintiff left vacant. Instead, Booking Agent Luciana Davis absorbed Plaintiff's duties. Plaintiff's attempt to characterize Ms. Davis as her replacement falls short for several reasons. First, Ms. Davis was already employed with the Department.[53] No evidence indicates Chief Evans was looking to have Ms. Davis fill Plaintiff's position.[54] Moreover, Plaintiff asserts Ms. Davis did not assume all of Plaintiff's duties, and no evidence indicates Ms. Davis's duties changed. Thus, Plaintiff also fails to establish a *prima facie* case of age discrimination under the theory she was replaced by a younger employee.

### 2. Pretext

Even if Plaintiff could establish a *prima facie* case of discrimination under Title VII and/or the ADEA, the City has articulated legitimate, nondiscriminatory reasons for terminating Plaintiff—her multiple attendance-related violations of City and

---

[52] *Morris v. Emory Clinic*, 402 F.3d 1076, 1082 (11th Cir. 2005) (internal quotation marks and citation omitted).

[53] *Compare Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) and *Phillips v. Aaron Rents, Inc.*, 262 F. Appx. 202 (11th Cir. 2008) (replacements hired either soon before or soon after plaintiff's termination).

[54] *Compare Rollins*, 833 F.2d at 1529.

Departmental rules and violations. Thus, to survive summary judgment, Plaintiff must present sufficient evidence to create a genuine issue of material fact that the City's reasons are merely pretext for unlawful gender and/or age discrimination. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions."[55]

To establish pretext, a "plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this <u>either</u> directly by persuading the court that a discriminatory reason more likely motivated the employer <u>or</u> indirectly by showing that the employer's proffered explanation is unworthy of credence."[56]   The inquiry into pretext is concerned with the employer's beliefs, not the employee's perceptions of her performance.[57] Furthermore, this Court does not "sit a super-personnel department that reexamines an entity's business decisions."[58]

Here, Plaintiff fails to show any genuine issue of material fact exists showing Defendant's decision to terminate Plaintiff was merely pretext for gender or age discrimination. No reasonable juror could find the City's reasons for terminating Plaintiff are unworthy of credence or were motivated by any discriminatory animus based on age

---

[55] *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quotations and citation omitted).
[56]*Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (emphasis added) (quotations and citation omitted).
[57] *Holifield*, 115 F.3d at 1565.
[58] *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991) (quotation omitted).

or gender. During the last year and a nine months of Plaintiff's employment, Plaintiff had seven attendance-related infractions, five of which occurred in the last nine months of her employment, and all of which resulted in disciplinary actions. Plaintiff *admitted* each of these infractions violated the City and Departmental policies. Moreover, these infractions came after she had exhausted all of her leave and used more than 85 hours of leave-without-pay at the end of 2012 that Chief Evans approved. Any argument that HR employee Toni Graham's comment to Plaintiff in January 2013 that the City "may be trying to get rid of [her] before her retirement benefits . . . vested" establishes pretext for age discrimination is unpersuasive. Ms. Graham's comment is merely her conjecture. Plaintiff "must present concrete evidence in the form of specific facts which show that [the City's] proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice."[59] Plaintiff relies on her contentions that other similarly situated individuals were treated better than her, which this Court has rejected, and fails to present any concrete evidence to rebut the City's proffered reasons for her termination.[60]

It is well established that "[a]n employer may fire an employee for a good reason, bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."[61] "Neither the plaintiff nor the court may recast the

---

[59] *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

[60] For these same reasons, Plaintiff has failed to show age was the but-for cause of her termination. *See Gross*, 557 U.S. at 176-77.

[61] *Silvera*, 244 F.3d at 1262 (internal quotation marks omitted).

reason given by an employer for taking or failing to take a particular job action."[62] The burden is on Plaintiff to establish that her protected characteristic "actually motivated the employer's decision."[63] Plaintiff has failed to carry her burden.

### 3. Convincing Mosaic

The Court recognizes that the *McDonnell Douglas* framework "is not the exclusive means" of prevailing on a discrimination claim based on circumstantial evidence.[64] Indeed, it "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination."[65] The Eleventh Circuit has provided that "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"[66] For summary judgment to be improper, the circumstantial evidence, when taken in the light most favorable to Plaintiff, must be "convincing" and must raise a "reasonable inference" the employer acted with discriminatory intent.[67] Here, even when construed in the light most favorable to Plaintiff, the record simply does not support a reasonable inference of intentional

---

[62] *Id.* at 1260.

[63] *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (internal quotation marks omitted).

[64] *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768, n. 3 (11th Cir. 2005) (Title VII).

[65] *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (internal quotation omitted).

[66] *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)).

[67] *Id.*

discrimination based on Plaintiff's gender or age.

### 4. Mixed Motive (Title VII)

In addition, no genuine issue of material fact exists to support any mixed-motive claim for gender discrimination.[68] A plaintiff "can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on sex or gender, was a motivating factor for an adverse employment action, even though other factors also motivated the action."[69] "To avoid summary judgment, a plaintiff raising a mixed-motive claim must offer evidence sufficient to convince a jury that: (1) the employer took an adverse employment action against her; and (2) a protected characteristic was a motivating factor for the employer's adverse employment action."[70]

First, Plaintiff does not specifically raise a mixed-motive claim. However, even assuming Plaintiff has raised such a claim, as explained above, no evidence exists from which a reasonable jury could conclude that her gender was a motivating factor in her termination. Chief Evans hired Plaintiff knowing she was female, and all the evidence suggests that he fired her based on attendance-related violations of the City's and the Department's policies, without any regard to her gender. Thus, Plaintiff's Title VII discrimination claims do not survive summary judgment under the mixed-motive framework.

---

[68] The Supreme Court's ruling in *Gross*, 557 U.S. 167 (2009), rejected mixed motive age discrimination claims.
[69] *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (citations omitted).
[70] *Bowen v. Manheim Remarketing, Inc.*, 882 F.2d 1358, 1364 (11th Cir. 2018) (internal quotation marks and citation omitted).

## II.    ADA FAILURE TO ACCOMMODATE CLAIM

Plaintiff also contends the City denied her reasonable accommodation in violation of the ADA. "An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer."[71] An accommodation is "reasonable," and thus required by the ADA, only if it enables the employee to perform the essential functions of the job.[72] The duty to provide a reasonable accommodation, however, "is not triggered unless a specific demand for an accommodation has been made."[73] Thus, the initial burden of requesting an accommodation is on the employee, and only after the employee has satisfied that burden and the employer failed to provide the accommodation can the employee prevail on a discrimination claim.[74] The plaintiff bears the burden of identifying a reasonable accommodation, and an employer is not required to accommodate an employee in any manner in which the employee desires.[75]

Here, Plaintiff has failed to provide sufficient evidence to show she requested an accommodation for her alleged disability. An employer is not required to provide a

---

[71] *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (quoting *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (citing 42 U.S.C. § 12112(b)(5)(A)).

[72] *Id.* at 1255.

[73]  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam).

[74] *Id.*

[75] *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997)

reasonable accommodation unless the employee makes a "specific demand."[76] While the Eleventh Circuit has not "determined precisely what form the request [for reasonable accommodation] must take,"[77] it has indicated in an unpublished opinion that "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [employer] to make appropriate inquiries about the possible need for an accommodation."[78]

Plaintiff contends her requests for leave were requests for reasonable accommodations under the ADA, and Chief Evans's refusal to approve her leave requests despite knowing she had a health condition that impacted her leave balance were denials of her requests for specific accommodations. This argument, however, is nothing more than her own subjective belief that her supervisors should have known that she impliedly requested an accommodation. No evidence indicates the Chief knew of her desire for an accommodation or that a reasonable employer should have made inquiries about the possible need for an accommodation. Plaintiff did not indicate she needed accommodation

---

[76] *Gaston,* 167 F.3d at 1363.

[77] *Holly v. Clairson Indus., LLC,* 492 F.3d 1247, 1261 n. 14 (11th Cir. 2007).

[78] *United States v. Hialeah Hous. Auth.,* 418 F. App'x 872, 876 (11th Cir. 2011) (per curiam) (internal quotation marks and citation omitted); *see also Hunt v. Aimco Props., L.P.,* 814 F.3d 1213, 1226 (11th Cir. 2016) (holding in FHA case that 'a plaintiff can be said have made a request for accommodation when the defendant has enough information to know of both the disability and desire for an accommodation.") (internal quotation marks and citation omitted).

or any adjustment to her schedule. When Plaintiff requested leave due to her headaches, she received it.

Even if Plaintiff's requests for leave qualified as specific requests for accommodations, no reasonable jury could find the City failed to accommodate her. On the contrary, Plaintiff's own testimony indicates she received all of the leave she requested for any occasions in which she suffered from headaches.[79] Moreover, no evidence indicates her discipline for tardiness, absences, and misuse of leave had anything to do with her headaches. Plaintiff contends the City only disciplined her for the attendance-related, minor infractions because she had taken leave due to her headaches. However, Plaintiff's contention is just that—a contention based on nothing more than speculation and her own subjective beliefs. No evidence supports her argument. Thus, Plaintiff's ADA reasonable accommodation claim cannot survive summary judgment.

## III.    TITLE VII, ADEA, AND ADA RETALIATION CLAIMS

Plaintiff also asserts the City terminated her in retaliation for having complained to City personnel and for filing the formal grievance against Chief Evans on August 22, 2014, in violation of Title VII, the ADEA, and the ADA. Because the evidence is circumstantial, the *McDonnell Douglas* burden-shifting framework detailed above applies to Plaintiff's retaliation claims, although the elements of the *prima facie* case differ. "[T]o successfully allege a *prima facie* retaliation claim under either Title VII, the ADEA, or the ADA, a

---

[79] Pl. Depo., p. 202 [Doc. 31-32].

plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression."[80] "Once a *prima facie* case has been established, the [employer] may come forward with legitimate reasons for the employment action to negate the inference of retaliation."[81] If the employer is able to show legitimate reasons for the adverse employment action, the burden shifts back to the employee to demonstrate by a preponderance of the evidence that the employer's reasons are pretextual.[82] Here, Plaintiff fails to establish a *prima facie* case of retaliation.

### A. *Prima Facie* Case

To satisfy a *prima facie* case of retaliation, Plaintiff must first show she engaged in statutorily protected activity. To establish that a plaintiff engaged in statutorily protected expression under the opposition clause, the Eleventh Circuit has held that a plaintiff must show she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."[83] Thus, Plaintiff "must not only show that [s]he subjectively (that is, in good faith) believed that [the City] was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented."[84]

---

[80] *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (citations omitted).
[81] *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310-11 (11th Cir. 2016) (citations omitted).
[82] *Id.*
[83] *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (citations omitted).
[84] *Id.*

Complaints, whether formal or informal, are not protected activity unless they satisfy two criteria. First, Plaintiff's complaint must have put the City on notice that she was opposing a practice made unlawful by Title VII, the ADEA, and the ADA. "A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination."[85] Second, the complaint must have been based on "a 'good faith reasonable belief' that her employer was engaged in unlawful discrimination."[86] A complaint about conduct that cannot reasonably be believed to violate anti-discrimination laws is not a protected activity for Title VII, ADEA, and ADA purposes.

### 1. Formal Grievance

Plaintiff did not engage in statutorily protected activity when she filed her formal grievance on August 22, 2014, because her allegations did not put the City on notice she was opposing any unlawful conduct under Title VII, the ADEA, or the ADA. In the five-page formal grievance[87] and the eleven-page supplemental complaint she submitted to HR on August 25, 2014,[88] Plaintiff does not mention age, sex, or her disability. Plaintiff complained of "misuse of position, actions unbecoming, harassment, and targeting"

---

[85] *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (internal quotation marks and citation omitted).

[86] *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

[87] Formal Grievance against Chief Evans, Pl. Depo., Ex. 20 [Doc. 27-19].

[88] Supplemental Statement to Grievance, "Complaints against Chief of Police Brett Evans," Ex. 23 [Doc. 27-23].

because of her use of sick leave and her tardiness.[89] Specifically, Plaintiff complained Chief Evans "wrongfully used his position to provide jobs as favors to friends[,] [r]egardless of the costs of others," took "actions that have proven to not be in the best interest of the [WRPD], the City [ ], or the citizens of Warner Robins," and "harassed and targeted [her] in order to cover up his improper actions of moving me from IDC."[90] In addition, she complains that her supervisors, under the direction of Chief Evans, "continued to harass [her] about [her] use of sick leave," "wrongfully accused [her] of taking excessive breaks," and "harassed [ ] and wrongfully accused [her] of blatant tardiness."[91] Plaintiff's complaints about Chief Evans's conduct cannot reasonably be believed to violate anti-discrimination laws under Title VII, ADEA, and ADA.

However, even assuming Plaintiff's formal grievance qualifies as statutorily protected activity under the ADA, Title VII, or the ADEA, Plaintiff cannot establish filing this grievance was causally related to her termination. ADA, Title VII, and ADEA retaliation claims must be proved according to the traditional principles of "but-for" causation, meaning that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."[92] "[T]he plaintiff always has

---

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 778 (11th Cir. 2014). Because no claim survives summary judgment, it is unnecessary for this Court to address whether multiple "but-for" employment discrimination claims may proceed past the summary judgment stage. *Compare Jones v. Allstate Ins. Co.*, 281 F. Supp. 3d 1211, (N.D. Ala. 2016) (finding multiple "but-for" employment discrimination claims may not proceed past

the burden of persuasion to proffer evidence sufficient to permit a reasonable fact finder to conclude that discriminatory animus was the but-for cause of the adverse employment action."[93] "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."[94] "But mere temporal proximity, without more, must be 'very close.'"[95]

Here, even the "very close" temporal proximity between the date Plaintiff filed her formal grievance and her termination three weeks later will not satisfy the causation standard. On August 22 when Plaintiff filed the grievance, she was on probationary status and out on administrative leave pending the IA investigation from her failure to report to work on August 18; in addition, she had been warned she could be terminated. "When an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."[96]

Plaintiff did not make any other complaints of sex or age discrimination. Thus, because Plaintiff fails to show she engaged in statutorily protected activity and, even if she did, such activity was causally related to an adverse employment action, she fails to

---

summary judgment), *with Hein v. IMS Gear Holding, Inc.*, Case No. 2:16-CV-81, 2018 WL 1833254 (N.D. Ga. January 31, 2018) (allowing multiple "but-for" employment discrimination claims to proceed through summary judgment).

[93] *Smith*, 565 F. App'x at 778 (internal quotation marks and citation omitted).

[94] *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted).

[95] *Id.* (citation omitted).

[96] *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

establish a *prima facie* case of retaliation claim under Title VII and the ADEA, and the City is entitled to summary judgment on those claims.

### 2. Informal Complaints related to ADA Retaliation Claim

As to her ADA retaliation claim, Plaintiff states she made two informal complaints to personnel in the Human Resources Department ("HR"). In January 2013, when she learned of her transfer from ICD to work the night shift on the Front Desk, Plaintiff complained to Toni Graham in HR that she believed she was being treated differently because of her requests for and use of leave to accommodate her disability. In early August 2014, when she returned to work from administrative leave while the Department investigated her absences while serving on the grand jury, she complained to HR Director Bryan Fobbus that she believed she was being harassed for use of sick leave for her chronic and severe headaches. These complaints sufficiently qualify as activity protected by the ADA.

Plaintiff, however, fails to establish a causal connection between these complaints and any discipline she received, including her termination. As stated above, to establish causation, Plaintiff must show the decision-maker was aware of the protected conduct[97]

---

[97] *Singleton v. Public Health Trust of Miami-Dade County*, 725 F. App'x 736, 738 (11th Cir. 2018) (internal quotation marks and citations omitted).

and that the statutorily protected expression was the "but-for" cause of the disciplinary action.[98] Plaintiff can prove neither.

"At a minimum," the employee must show the decision maker was "actually aware" of the protected conduct at the time it took the adverse employment action.[99] As to Plaintiff's complaint to Ms. Graham in Human Resources, the record contains no evidence Chief Evans, the decision maker, knew of any such complaint. Even if he did have knowledge, Plaintiff fails to show (or even argue) how Plaintiff's complaint to Ms. Graham was the but-for cause of any disciplinary action she suffered. First, Plaintiff's complaint cannot be the cause of her transfer to work the night shift at the Front Desk because Chief Evans had already made the decision to transfer Plaintiff before she complained to Ms. Graham. Second, no reasonable juror could find the City terminated Plaintiff because of her complaint to Ms. Graham. Plaintiff complained in January 2013 and was terminated a year and nine months later in September 2014. Thus, it cannot satisfy the "very close" temporal proximity required to establish causation.[100]

As to Plaintiff's complaint to HR Director Fobbus, again, no evidence shows Chief Evans was aware of this complaint. Even if Chief Evans was aware, and the six-week temporal proximity between Plaintiff's complaint and her termination sufficiently satisfies

---

[98] *Frazier-White v. Gee*, 818 F.3d 1249 (11th Cir. 2016) (citation omitted).
[99] *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).
[100] *Id.* (citation omitted).

a causal connection,[101] Plaintiff's claim still fails because she cannot establish the City's legitimate, non-retaliatory reasons for termination are merely pretext for retaliation. The record contains no evidence other than the close temporal proximity between her complaint to Fobbus and her termination, but close temporal proximity, standing alone, is insufficient to establish pretext.[102]

## IV.   FMLA CLAIMS

Under the FMLA, employees are entitled to leave for specified family and medical reasons.[103] In relevant part to this case, the FMLA provides that an employee is entitled to up to twelve weeks of leave each year "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[104]

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" these FMLA rights.[105] It is also unlawful for an employer to

---

[101] The Eleventh Circuit has held that a three-to-four-month gap between the protected activity and the adverse action is too long to alone establish causation, *Thomas*, 506 F.3d at 1364, but it has held that seven and eight weeks is sufficiently proximate to create a causal nexus, *see Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficient); *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 702 (11th Cir. 1998) (holding that adverse-employment action taken between five weeks and "a couple of months" of plaintiff's filing of an EEOC complaint was sufficient to establish a causal connection).

[102] *Anyanwu v. Brumos Motor Cars, Inc.*, 496 F. App'x 943, 947-48 (11th Cir. 2012) (while close temporal proximity can contribute to a finding of pretext, by itself, it is not enough); *Walden v. Ctrs. For Disease Control and Prevention*, 669 F.3d 1277, 1290 (11th Cir. 2012) (a showing of temporal proximity not enough to negate evidence of non-retaliatory reasons for adverse employment action); *Matias v. Sears Home Improvement Prods.*, 391 F. App'x 782, 787-88 (11th Cir. 2010) ("Brown does not argue that temporal proximity, standing alone, is sufficient to establish pretext. Nor could he under our precedent."); *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (holding close proximity of two weeks between protected conduct and termination was "evidence pretext, though probably insufficient to establish pretext by itself.").

[103] *See generally* 29 U.S.C. § 2612.

[104] *Id*. at § 2612(a)(1)(D).

[105] *Id*. at § 2615(a)(1).

"discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.[106] An employee seeking to enforce the FMLA's substantive provisions may bring a private action against his employer.[107] The Eleventh Circuit has recognized two types of FMLA claims: retaliation and interference.[108] Plaintiff asserts claims for both.

### A. FMLA Interference

"To prove FMLA interference, [Plaintiff] must demonstrate that she was denied a benefit to which she was entitled under the FMLA and that she has been prejudiced by the violation in some way."[109] Plaintiff "need not show that the employer intended to deny an FMLA benefit—the employer's motives are irrelevant in the context of an interference claim."[110]

Plaintiff essentially contends the City should have known she was entitled to FMLA benefits and failed in its duty to inform her of such benefits. Before taking leave, an employee requesting FMLA leave is required to give notice to the employer.[111] Notice is valid if it is "sufficient to make the employer aware that the employee needs FMLA

---

[106] *Id.* at § 2615(a)(2).

[107] *Id.* at § 2617.

[108] *Hurlbert*, 439 F.3d at 1293.

[109] *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014) (internal quotation marks and citations omitted).

[110] *Bartels v. So. Motors of Savannah, Inc.*, 681 F. App'x 834, 840 (11th Cir. 2017) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006)).

[111] 29 C.F.R. § 825.302(a).

qualifying leave."[112] An employee is not required to "expressly assert rights under the FMLA or even mention the FMLA."[113] However, the employee must provide the employer with notice sufficient to "make the employer aware that [the] absence is due to a potentially FMLA-qualifying reason."[114] Without sufficient notice, the employer is under no obligation to comply with the requirements of the FMLA.[115] The regulations provide that calling in "sick" without providing more information is not sufficient notice to trigger an employer's FMLA obligations.[116] The FMLA, however, does not require "employers to engage in intrusive inquiries to determine whether the FMLA applies."[117]

Here, viewing the evidence in the light most favorable to Plaintiff, sufficient evidence exists from which a reasonable jury could find Plaintiff provided the City with sufficient notice to trigger its FMLA obligations to inform her of FMLA benefits. However, Plaintiff must also demonstrate the denial of the benefit harmed her.[118] Plaintiff cannot show she suffered any harm; thus, she cannot maintain her FMLA interference claim. Plaintiff received all of the leave she requested due to her headaches. "[A] plaintiff suffers no FMLA injury when [she] receives all the leave [she] requests, and indeed is

---

[112] 29 C.F.R. § 825.303(a); § 825.302(c).

[113] *Id.*

[114] *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997).

[115] *See Andrews v. CSX Transp., Inc.*, 737 F. Supp. 2d 1342, 1351 (M.D. Fla. 2010).

[116] 29 C.F.R. § 825.303.

[117] *Andrews v. CSX Transp., Inc.*, 737 F. Supp. 2d 1342, 1351 (M.D. Fla. 2010).

[118] *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999).

paid for most of it."[119] Thus, the City is entitled to summary judgment on Plaintiff's FMLA interference claim.

### B. FMLA Retaliation

Plaintiff also contends the City terminated her employment in retaliation for exercising her FMLA rights. To succeed on a FMLA retaliation claim, an employee must demonstrate her employer intentionally discriminated against her in the form of an adverse employment action for having exercised a FMLA right.[120] A plaintiff bringing a retaliation claim must show that her employer's actions "'were motivated by an impermissible retaliatory or discriminatory animus.'"[121] Like her other retaliation claims, Plaintiff offers no direct evidence of discriminatory retaliation in violation of the FMLA; thus, the Court must analyze this claim under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* set forth above.[122]

Here, even assuming Plaintiff's requests for leave due to her headaches qualify as statutorily protected activity under the FMLA, and even assuming she could establish such requests were not "wholly unrelated" to her termination,[123] no reasonable factfinder could find the City's legitimate, non-retaliatory reasons for her termination are merely

---

[119] *Id.*

[120] *See Strickland*, 239 F.3d at 1207.

[121] *Id.*

[122] *Id.*

[123] *See Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). The Eleventh Circuit has not ruled whether the but-for causation standard applicable to Title VII, ADEA, and ADA retaliation claims applies to FMLA retaliation claims. Thus, the Court will assume for purposes of summary judgment that the more lenient "not wholly unrelated" causation standard applies.

pretext for retaliation. As stated above, all evidence shows the City terminated Plaintiff's employment because of her repeated violations of City and Departmental policies and rules regarding tardiness, unexcused absences, and misuse of leave that had no relationship to her headaches. Plaintiff's seven attendance-related infractions in the last year and nine months of Plaintiff's employment were in no way FMLA-related. Indeed, Plaintiff *admitted* violating the City and Departmental policies. Plaintiff fails to point to *any* evidence from which a jury could conclude these infractions were not the legitimate basis for her termination. Thus, the City is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 21] is **GRANTED**.

**SO ORDERED**, this 10th day of August, 2018.

S/ Tilman E. Self, III
TILMAN E. SELF, III, JUDGE
UNITED STATES DISTRICT COURT